THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN
T. STEPHENSON, Appellant.*

*Bribery — evidence of a prior offense not connected with the crime is inadmissible —
limits of cross-examination — financial history of a police captain, when improper
— evidence admitted upon a promise to connect it with the crime charged — if not
connected defendant need not move to strike it out.*

Upon the trial of an indictment for bribery it appeared that the defendant, a cap-
tain of police of the city of New York, was indicted for bribery in that on the
16th day of December, 1891, he had asked, received and agreed to receive from
Martin N. Edwards, a produce dealer, four baskets of peaches as a bribe upon
an agreement and understanding that in consideration of such bribe he would
violate his duty as such captain of police by knowingly suffering and permit-
ting Edwards to offend against an ordinance passed by the common council
of the city relative to sidewalk incumbrances.

The People proved by Edwards that, in May, 1891, James Kelly, a patrolman of
the precinct, came to Edwards and told him that the captain wanted a box of
Florida oranges sent to his address, and that on the 15th day of September,
1891, Kelly called again and said the captain wanted four baskets of peaches,
and that these peaches were delivered. Edwards also related another trans-
action in which Kelly requested him to pay the captain money, and also gave
a conversation in which, as he testified, the captain had said in reference to
these transactions, that any arrangement that Kelly saw fit to make with
Edwards or any favors which Kelly wanted to extend to Edwards would be all
right, and that he, the captain, would abide by them. The witness further
testified: I said to him, "You sent a man to me to say that you would take
fruit from us for taking care of us on the sidewalk; we have sent you the
fruit," to which the captain replied, "Inasmuch as you have sent me the fruit,
I will take care of this notice for you."

Upon the trial of the action, against the objection of the defendant, Edwards was
allowed to testify that in March, 1891, a patrolman named Thorne came to him
nd said that he was the captain's private man; that the captain used con-
ierable fruit, and that if there was no objection the captain would take fruit
the place of money for protecting Edwards as to the sidewalk; that Edwards
agreed to this, and upon Thorne's request shipped by American Express to the
captain a barrel of apples. No attempt was made to show that the barrel of
apples was delivered to the defendant at his house, and it did not appear that
Thorne was his private man nor was the defendant connected with Thorne in
any way by subsequent testimony, although the evidence was admitted upon
the statement by the district attorney that he would connect this interview with
the crime for which the captain was on trial. Notwithstanding the fact that

---

* Decided with the following cases in First Department, December 30, 1895.

FIRST DEPARTMENT, DECEMBER TERM, 1895.            [Vol. 91.

the district attorney gave no evidence connecting the shipment of apples with the crime charged, the evidence was not stricken out and went to the jury.

The prosecution was permitted, against the objection of the defendant, to prove in detail all of the property, real and personal, owned by the defendant, as well as that possessed by his wife, accumulated during a period of seventeen years' service, the prosecution apparently intending that the jury should draw from the evidence the inference that the defendant's property had not been obtained honestly, but was the outcome of a system of bribery, of which the offense charged in the indictment was but a single instance.

The defendant was convicted.

*Held*, that testimony of Edwards as to the transactions of Edwards with Thorne relative to the barrel of apples, occurring six months before the commission of the offense charged, was inadmissible against the defendant;

That no ratification by the defendant of Thorne's proposition could be predicated upon the evidence (FOLLETT, J., dissenting);

· That the position taken by the People, that the defendant was bound by the testimony because he did not move to strike out the evidence before the close of the case, was untenable;

That where the People are permitted to introduce evidence upon a promise to connect it with the crime charged and fail to do this, it is the duty of the district attorney to withdraw the testimony from the consideration of the jury, thereby remedying as far as possible the wrong which has been done the defendant by the admission of the evidence in the first instance;

That the cross-examination of the defendant as to the property of himself and his wife accumulated during a period of seventeen years' service in the police force was improper and exceeded the reasonable limits of a cross-examination;

That the rule as to the cross-examination of the defendant in a criminal case is that he may be inquired of in relation to the facts brought out on his direct examination as well as in regard to all other facts which are pertinent to the issue, whether or not inquiry has been made in regard to them upon the direct examination; and further, that facts tending to discredit him as a witness or to impeach his moral character may also be elicited;

That the amount of property accumulated by the defendant was in no view pertinent to the issue, and that proof that a police captain had accumulated $10,000 in seventeen years did not tend to discredit him or impeach his moral character.

APPEAL by the defendant, John T. Stephenson, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of December, 1894, upon the verdict of a jury, rendered after a trial at a Court of Oyer and Terminer, convicting the defendant of the crime of bribery.

*Benjamin F. Tracy* and *John Vincent*, for the appellant.

*John R. Fellows, District Attorney,* and *John D. Lindsay, Assistant District Attorney,* for the respondent.

PARKER, J. :

The indictment under which the defendant was convicted charged him with having on the 16th day of December, 1891, at the city and county of New York, while a captain of police, and in charge of the fifth police precinct of said city, asked, received and agreed to receive, from one Martin N. Edwards, a produce merchant carrying on business in said precinct, four baskets of peaches as a bribe upon an agreement and understanding that in consideration of such bribe, he would violate his duty as such captain of police by knowingly suffering and permitting Edwards to offend against an ordinance passed by the common council of said city relative to sidewalk incumbrances.

Upon the trial, the People, after proving the ordinance bearing upon the issue; defendant's official position; the taking of the oath of office required by law; his transfer to the fifth precinct on the 8th day of December, 1890, and that he continued in charge of such precinct during all the period of time referred to in the evidence of Martin N. Edwards, called Edwards, who testified that one Melvin Whispell and himself were associated together in the fruit business in the fifth precinct; that, early in March, 1891, Augustus J. Thorne, a patrolman, approached him and said that there was a new captain in the district — Captain John Stephenson; that he was the captain's private man; that the captain used considerable fruit, and, if there was no objection, the captain would take fruit in the place of money for protecting Edwards on the sidewalk; to which Edwards replied that it was immaterial to him whether he took fruit or money, and asked Thorne if he had an order for the fruit then. Thorne said he had not, but would come with it the next day. The following day Thorne called and brought with him a card, upon which was written "Captain John T. Stephenson, 2074 Washington avenue, Tremont." He handed the card to Edwards and said : "This is the captain's address, and he wants to have a barrel of apples shipped to this address ; to ship

First Department, December Term, 1895.          [Vol. 91.

it by the American express." Edwards took the card, marked a barrel of apples as requested, and delivered it to the American Express Company. No attempt was made to show that the barrel of apples was delivered to Stephenson at his house, and it does not appear that Thorne was the captain's private man, nor was the captain in any way connected with him by subsequent testimony. It does not appear from the record that Thorne's name was ever mentioned to him in connection with the conversation to which Edwards testified, or that he ever heard of such conversation until Edwards testified to it.

Edwards further testified that, in the latter part of April, or early in May, 1891, James Kelly, another patrolman of the defendant's command, who had been in that precinct continuously from October, 1873, and who, early in February, 1891, had been especially detailed by the police board on corporation ordinance duty in the fifth precinct, called on him, while he was standing on the sidewalk in front of his place of business, and told him that the captain wanted a box of Florida oranges sent up to his address. Edwards replied that he did not have any oranges, and testified that he did not send them. A month or so later, Kelly reported certain violations of the corporation ordinance by Edwards and his partner to Captain Stephenson, who promptly forwarded the complaints to the chief clerk of the board of police. August 10, 1891, an action was commenced by the corporation attorney to recover penalties on four of these complaints, and judgment was rendered against Edwards thereon on the 28th of August, 1891. This judgment Edwards paid. September 15, 1891, Kelly called again, and said the captain wanted four baskets of peaches, good for canning purposes, sent to his address. Edwards says that, without further conversation, he personally addressed four baskets of peaches to the captain at the address which Kelly had given him in April or May, and delivered them to the American Express Company. Evidence was offered tending to show that the agent of the express company made delivery of the peaches at the address marked on the baskets, and the receipt book bore the signature, Mrs. J. T. Stephenson. Mrs. Stephenson denied that it was her signature, or that she received the peaches, and the defendant also denied all knowledge of them. On the 28th day of September, 1891, the corporation attorney began

another action against Edwards & Whispell, for violations of the sidewalk ordinance, and Edwards testified that he went at once with the notice to Captain Stephenson, whom he found at the station house. He describes what took place as follows:

" When I first went into the station house the captain was not in his room. I inquired for the captain. They said he would be there in a few moments. In a few moments I saw him come out of a back room, and he said : ' I am Captain Stephenson,' and took me to his private office, unlocked the door, or opened the door, and invited me in. I said to him : ' Captain Stephenson, here is a notice that I have got of a fine for obstructing the sidewalk ; this is the second notice I have received ; the first one I paid ; I thought it was a mistake, probably, and paid it. Here is the second one I received. What is there about this ? I thought I had an understanding with you that you would take care of my sidewalk.' He said : ' That is evidently a mistake ; you leave it with me, and I will attend to it for you.' I left the notice with him."

Notwithstanding this interview, judgment was rendered against Edwards & Whispell on October nineteenth for five dollars and costs. As soon as Edwards received notice of this second judgment he went again to Captain Stephenson. In response to the question : " State what happened ? " Edwards testified as follows : " A. I said to him : ' Captain Stephenson, here is a notice of judgment against me ; I brought the notice around to you some time ago, and you agreed to take care of that. You asked me to leave that notice with you, and you would take care of it. It is evident you haven't done it. Here is a notice of judgment.' He says : ' Damn it, I told so-and-so to go and attend to that, but he evidently hasn't done it. You leave this notice of judgment with me, and I will take care of it for you.' I left it with him."

" By the Court : Q. Anything else said ? A. Yes, sir. Q. Go on. A. I said to him : ' You sent a man to me to say that you would take fruit from us for taking care of us on the sidewalk. We have sent you the fruit as you have ordered it, from time to time, and how is it you haven't attended to this notice for us ?' Q. That you have taken fruit ? A. We have sent him fruit. Q. For doing what ? A. For taking care of us on the walk. Q. What

did he say? A. Inasmuch as you have sent me the fruit I will take care of this notice for you. Q. He said that? A. Yes, sir. Q. Anything else? A. He said : ' It is not customary for me to do this kind of business; I never lay myself liable to these people down town.' Q. What else? A. ' Any arrangement that Mr. Kelly sees fit to make with you, or any favors that he wants to extend to you will be all right, and I will abide by it.' "

Edwards testified also that, about the 10th of November, 1891, Kelly again came to him and said, " The captain wants fifty dollars." Edwards replied that he had fulfilled his agreement by furnishing him with fruit. Kelly answered that the captain " was not satisfied with that; he wants money — wants fifty dollars." Edwards protested that he could not afford to pay the captain the fifty dollars, and asked Kelly to see if he would not be satisfied with twenty-five dollars. This Kelly promised to do, but returned after two or three hours, saying that the captain would not accept it. Edwards then put twenty-five dollars in bills in an envelope, addressed the envelope to the captain, sealed it up and handed it to Kelly. Within an hour Kelly returned and threw the envelope on the desk saying, " The captain won't have it. It must be fifty dollars or nothing, and you needn't pay it if you do not want to." Opening the envelope Edwards found the twenty-five dollars; he then made out a bill against the defendant for twelve dollars, the value of the apples and peaches, receipted the bill, placed it in another envelope with thirty-eight dollars in money, sealing and addressing it as before, and handed it to Kelly who carried it away with him. The next day, according to Edwards, Kelly called on him again and told him to go before the court and say that they (Edwards and his partner) had probably obstructed the sidewalk a little, but would be careful not to do so in the future, and the judge " would rub out the judgment," or words to that effect. This Edwards says he did and the case was dismissed.

The first question pressed upon our attention is as to the correctness of the ruling of the court admitting the evidence of the conversation between Edwards and Policeman Thorne against the objection of the defendant.

There is no evidence whatever in this case connecting Thorne with this defendant. There is no evidence tending to show that he

was ever the defendant's " private man." On the contrary, there is evidence that he never was.

In the respondent's brief it is said that Edwards' testimony is to the effect that the defendant admitted that he had sent Thorne to him for the purpose of making an arrangement to have fruit sent to him from time to time. There is no direct evidence to that effect, nor is there any evidence from which such an inference can properly be drawn. The only evidence which it is even pretended tends in that direction has been quoted in full by us. The captain is alleged to have said, " Any arrangement that Mr. Kelly sees fit to make with you or any favors he wants to extend to you will be all right and I will abide by it."

Nothing is said about Thorne, his name is not mentioned, he is not in any way referred to. Indeed the language used expressly excludes the claim that the captain referred to anything that Thorne had done. He expressly refers to Kelly, and to Kelly only; he is the acknowledged representative and no one else. The interview occurred almost immediately after the sending of the peaches to the captain at Kelly's request, and the expression regarding the sending of the fruit, assuming as we must that it was made, necessarily refers to Kelly, who was directly and solely named by the defendant in that connection. What Thorne had done occurred six months before.

In civil actions ratification would never be predicated upon such evidence. How much less can it be relied upon to establish a criminal act. And yet Edwards was permitted to testify that Thorne came to him and said : " I am the captain's private man; the captain uses considerable fruit, and if you have no objections he will take fruit from you in place of money for protecting you on the sidewalk." " I said it was immaterial to us; we would as leave he would take fruit as the money; we would give him fruit. I asked him if he had the order for the fruit now. He said no; he would come the next day with it."

Edwards said that he did come the next day with an order for a barrel of apples for the captain, but it does not appear that it was ever delivered to the defendant. When it is considered that the charge against this defendant was that he agreed, in violation of his duty as a public officer, to accept a bribe as a consideration for protect-

ing Edwards in disobeying the law, the conclusion is inevitable that this evidence must have had great weight with the jury.

Indeed, the record is not without direct evidence that the jury attached importance to it, for we learn from it that after the jury had been charged by the court, and had retired, they returned with a request that the evidence of one of the witnesses be read, after which a juror asked this question : " Would I be at liberty to ask where this Thorne is ?   Is he out of the reach of the court ? "'

The assertion that this evidence was prejudicial to the defendant and ought not to have been considered by the jury, is so clearly well founded as to be beyond the reach of reasonable controversy. The question is, whether this defendant, by proper objection and exception, is in a position to make the point on this appeal.   His objection to its admission was seasonably and properly made, and the court, at once appreciating its forcefulness, inquired of the district attorney whether he intended ," to connect the defendant with the interview between the witness and Officer Thorne."   This inquiry being answered in the affirmative, the court overruled the objection, and in giving the reasons for it said : " As I understand the district attorney, he says that he will connect this interview with the direct crime for which the defendant is now on trial, and because this interview relates to the receipt of the peaches, I overrule the objection, cautioning the jury again that it is not to try him for the apples, nor is he to be found guilty on this indictment because he sent the apples, but it is to be connected by the district attorney with the crime with which he is charged ; if not, I will strike it out."   The district attorney did not connect it, but the evidence was not stricken out.

It is said that while the defendant's objection was in time, it is, nevertheless, not available to him because he did not move to strike out the objectionable testimony before the close of the case.   There are civil cases in which the courts have indulged in expressions to that effect.   (*Baylis* v. *Cockroft*, 81 N. Y. 363.)   We cannot discover any good reasons for such a rule even in civil actions, and certainly it ought not to obtain in criminal cases, in view of the policy of the law to carefully guard a defendant from the possibility of harm from evidence calculated to prejudice a jury, rather than to prove the offense charged ; nor have we found a criminal case in which

the existence of such a rule has been asserted. Such a rule would place a premium upon the recklessness of prosecuting counsel. By a promise to connect, the prosecuting counsel could deprive a defendant of an exception which but for it would be well taken. To assert that a defendant may be deprived of the protection of the law simply upon the assertion of counsel is a novel proposition, to say the least. But the contention of the People amounts to this, and nothing more. The testimony offered was inadmissible as the evidence then stood. The court so held. Thereupon the counsel for the People promised to connect the defendant with the interview testified to, but he failed to keep his promise ; and in such case it should not be held that the promise, whether made in bad faith, or in good faith because based upon inaccurate information, should operate to the prejudice of the party accused. Such a result must necessarily ensue if a defendant be compelled to move to strike out the prejudicial and incompetent evidence. We think where such evidence is admitted because of the assertion of counsel of his ability and intention to connect it, that if the assertion be not kept good the counsel making the promise should be compelled to withdraw the testimony from the consideration of the jury. He is the party responsible for the wrong and should be compelled to right it in so far as he is able.

The prosecution was permitted, against the objection and exception of the defendant, to prove in detail the value of all the property, real and personal, owned by the defendant, as well as that possessed by his wife. The learned counsel for the prosecution conducted the examination on this subject in a manner calculated to produce a decided effect upon the minds of the jury. He first showed by the defendant that when he became a member of the police force all of his property did not exceed in value $500 or $600. This was followed by proof of the date of his appointment as patrolman ; the amount of his salary during the several periods when he was patrolman, sergeant and captain ; the date of his marriage ; number of his children ; the location of his residence ; the fact that he had not inherited any property except about $1,500, and specifically and in detail he was inquired of as to the sums paid by him for property from time to time, the result being that it was made to appear that he was worth between $9,000 and $10,000 at the time of the trial.

Without any warning or chance for preparation, the defendant was called upon to make such an accounting of his business affairs, covering seventeen years of active life, as should satisfy the jury that the property which he or his wife owned was not the fruit of various acts of bribery.

The object which the counsel for the prosecution had in mind in offering this evidence is apparent.

The defendant was indicted for receiving as a bribe four baskets of peaches. In making out the case for the People, the request by Thorne for a barrel of apples, under circumstances already adverted to, was shown. It was made to appear that Kelly told Edwards to send the captain a box of oranges, which was not done; that Edwards expressed four baskets of peaches to the captain, and that Kelly tried to collect of Edwards fifty dollars which he said was for the captain.

But as each of the charges was positively denied by the defendant, and as his wife had denied that the peaches ever came to the house, the prosecution sought to strengthen its position before the jury by the introduction of evidence from which it (the jury) was expected to draw the inference that the defendant's property was not obtained honestly, but was the fruit of a system of bribery of which the offense charged in the indictment was but a single instance.

The assertion that this evidence did not tend in any degree to prove the offense charged against the defendant; that it had no bearing whatever, upon any legitimate issue, and that its only effect was to inflame the prejudices and arouse the indignation of the jury, requires no argument for its support. It is obvious that it is true.

It is not pretended, in support of the judgment, that if the People had offered independent evidence of the defendant's poverty before becoming a policeman, and that the value of his property at the time of the trial was $10,000, such evidence would have been admissible.

It is urged, however, that the defendant having elected to become a witness, the limitations of his cross-examination were within the discretion of the court. This is not a correct statement of the rule. The principle that an accused person who becomes a witness in his

own behalf, thereby places himself in the attitude of any other witness in respect to the right of cross-examination, has been announced in many cases. (*Brandon* v. *People*, 42 N. Y. 265; *Conners* v. *People*, 50 id. 240; *Stover* v. *People*, 56 id. 315; *People* v. *Casey*, 72 id. 394.)

But the general scope of such a cross-examination is well defined and the courts will not allow any transgression of the well-understood limitations.

In *People* v. *Tice* (131 N. Y. 651), the leading case cited by the People, the boundaries of a cross-examination of a defendant in a criminal action are held to be, that he may be required to answer questions affecting his credibility, or as to matters relative to the issue, although having no relation to his testimony on the direct examination.

The opinion also refers to the discretion to be exercised by the trial court on such a cross-examination, and concedes that the trial court may properly restrict such cross-examination, but denies that it may extend such cross-examination beyond relevant matters or matters affecting credibility.

The rule and the reason for it found expression in *People* v. *Brown* (72 N. Y. 574), the court through Chief Judge Church saying, "I am of the opinion that the cross-examination of persons who are witnesses in their own behalf, when on trial for criminal offenses, should in general be limited to matters pertinent to the issue, or such as may be proved by other witnesses. I believe such a rule necessary to prevent a conviction for one offense by proof that the accused may have been guilty of others. Such a result can only be avoided, practically, by the observance of this rule."

In *People* v. *Crapo* (76 N. Y. 288) the defendant, who was on trial for burglary, was asked on cross-examination if he had been arrested on a charge of bigamy. The court, in holding the question inadmissible, stated the true rule to be, that the disparaging questions must either be relevant to the issue, or such as clearly go to impeach the moral character and credibility of the witness.

In *People ex rel. Phelps* v. *Oyer & Terminer* (83 N. Y. 436, 460) the court held that the range and extent of the cross-examination of a defendant in a criminal case is within the discretion of the trial judge, subject, however, to the limitation that it must relate to

matters pertinent to the issue, or to specific facts which tend to discredit the witness or impeach his moral character.

Other cases in great number might be cited to the same effect, but, as we have found none in conflict with them, it is unnecessary.

From these cases we understand the rule governing the cross-examination of a defendant in a criminal case to be that he may be inquired of in relation to the facts brought out on his direct examination as well as in relation to all other facts pertinent to the issue, whether the subject of direct examination or not, and that facts tending to discredit him as a witness or impeach his moral character may also be elicited; that while the trial court may, in the exercise of its discretion, still further restrict the cross-examination, it cannot extend it beyond the limits of such rule.

The defendant's counsel, on his direct examination of the defendant, did not open the door for the cross-examination we are considering. It is not pretended that the evidence elicited was pertinent to the issue before the court. And it need not be argued, we take it, that proof that a witness accumulated between $9,000 and $10,000 in seventeen years does not tend to discredit him or impeach his moral character.

It follows that, if the views expressed be sound, the judgment of conviction must be reversed and a new trial granted.

VAN BRUNT, P. J., concurred.

FOLLETT, J. (dissenting):

I cannot concur in the conclusion reached in the prevailing opinion, that the testimony of Edwards and Whispell, detailing the conversation had between themselves and Policeman Augustus J. Thorne in March, 1891, was irrelevant or incompetent.

Edwards testified: "He (Thorne) said, 'I am the captain's private man; the captain uses considerable fruit, and, if you have no objections, will take fruit from you in place of money for protecting you on the sidewalk.'"

Whispell testified: "Thorne said we had a new captain, and he was the captain's man, and that he was looking after the sidewalk business — something to that effect — and suggested fruit in payment for the use or protection of the sidewalk."

Both Edwards and Whispell testified that on the next day Thorne

called and left the defendant's card on which was his address, and that a barrel of apples was sent to him on the same day by the American Express. They testified that in April or May, 1891, Policeman James Kelly called and informed them the captain would like to have a box of Florida oranges sent to his house, and they replied they had none. They further testified that September 15, 1891, pursuant to Kelly's request, they sent four baskets of peaches to defendant's house. In September, 1891, the firm was fined for incumbering the sidewalk, and Edwards testified that he called on the defendant and inquired why he had not been protected, and said to him: "You sent a man to me to say that you would take fruit from us for taking care of us on the walk. We have sent you the fruit as you have ordered it from time to time, and how is it you haven't attended to this notice for us?" The defendant replied: "Inasmuch as you have sent me the fruit I will take care of this notice for you." This conversation between Edwards and the defendant clearly referred to the arrangement made with Thorne, for no arrangement had been made with Kelly to pay the captain in fruit for his protection. The captain by his answer assented to the statement that he had sent a man to arrange to take fruit in payment for sidewalk protection. This conversation, assuming that it was had, which was a question for the jury, could have referred to no arrangement but the one made with Thorne, and both the defendant and Edwards must have so understood it. The defendant did not inquire what arrangement? With whom was it made?

From May 5, 1877, to January 23, 1884, the defendant served as a patrolman and roundsman, at an annual salary of $1,200. During this period his pay amounted to $8,050. From January 23, 1884, to December 23, 1887, he served as sergeant, at an annual salary of $1,600. During this period his pay amounted to $6,066. From December 23, 1887, to September 6, 1894, he served as captain, at an annual salary of $2,750. During this period his pay amounted to over $18,600. During his service of seventeen years and four months he received in salary more than ....... $32,700

Worth when appointed.............................        500

Received from his wife's estate.....................      1,500
                                                    _____
                                                    $34,700

By his cross-examination it was shown that he had the following property:

| | |
|---|---:|
| A mortgage for | $3,000 |
| A farm for which he paid | 4,100 |
| A city lot, in the name of his wife, for which he paid | 2,000 |
| An interest in a house above the mortgages | 2,100 |
| | $11,200 |

His interest in the house was subject to mortgages amounting to $18,900. On his redirect examination he testified that he was not worth to exceed $10,000. His testimony did not tend to show ill-gotten gains. On the contrary, the inference to be drawn therefrom was that he had not acquired property by blackmail or by bribery.

The subjects on which a witness may be cross-examined for the purpose of determining his credibility, as well as the extent of such cross-examination, are largely in the discretion of the trial court and dependent upon the facts of each case, and when it appears that the credibility of a witness was strengthened rather than impaired by a cross-examination, even on immaterial subjects, it is not a legal error for which a new trial will be granted. The court, in its instructions to the jury, made no allusion to these facts, and it is not asserted that the prosecuting officer did, and these facts might and may have been urged with great force by the defendant's counsel to show that the defendant had not been the recipient of bribes or of blackmail. I am unable to see how the defendant could have been injured by this cross-examination.

It is charged in the indictment that September 15, 1891, the defendant received from Edwards four baskets of peaches as a bribe for not performing his duty in respect to the sidewalk in front of Edwards' store. Whether he received the peaches was the crucial issue of fact. Edwards and Whispell swore that he did, and that they were delivered through the American Express Company. The defendant denied it. His wife denied it. A way bill, of which the following is a copy, was introduced in evidence:

Hun.]            FIRST DEPARTMENT, DECEMBER TERM, 1895.

No. 221.          *Sep.* 15, 1891.    189

AMERICAN EXPRESS CO.— Freight Way bill.

$......Am. Exp. Tariff per 100 lbs.

$......Connecting Exp. do Chy 802

From New York 48th Street Depot.    To Fordham.

| No. Pack-ages. | Dolls | Cts. | From whom rec'd. | To whom Addressed. | Weight. | Charges Advanced. | Collect. | Add for Under Chgs. | Remarks. |
|---|---|---|---|---|---|---|---|---|---|
| 15 Bsks | ..... | ...... | ........ | St. John's College .. ... | 375 | N | $1 50 | ......... | Spec.    3 |
| 4 | ..... | ...... | ........ | J. T. Stevenson, 2074 Wash...... | 100 | N | 40 | 10 | Fruit |
| | | | | | | | | | 2w. |
| | | | | | | | $1 90 | 10 | |
| | | R. R. Acct. | | | | | | Sep. 15, 1891. | R. R. Acct. |

William F. Herger testified that September 15, 1891, he was a driver for the American Express Company, and on that day received the way bill and delivered four baskets of peaches at the defendant's residence, No. 2074 Washington avenue. In corroboration of his testimony, the following delivery sheet was read in evidence :

Received of American Express Company the following articles in good order, at Fordham, N. Y., Sept. 15, 1891, per Herger, Book No. 2, page 1.

| No. | Way Bill Date | Office at | State of | Articles | Marked to Contain Dolls. Cts. | Consignee | Destination | W'ght | Advance Charges | Total Charges to Pay | Received by | Amount of Prepaid Charges | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 220 | Sept. 14 | Jersey City, | | C. | ........ | G. W. Robinson | 1978 Bath ave. | 6 | N. | Pd. | Maggie Robinson. | | |
| — | — | | | T. K. | ........ | J. M. Logan | 1532 R. R. ave | 140 | N. 25 | 95 | Mrs. J. M. Logan ..... | 1 | |
| — | — | 48 st. | | Bl. | ........ | E. Waterman. | 1099 Wash. ave..... | 125 | N. | Pd. | E. Waterman. | 2 3 | |
| — | — | | | 2 P. | ........ | M. F. Schmittberger | 526–173... | 135 | N. | Pd. | Mrs. M. F. Schmittberger.. | | |
| 280 | — | | | R. K. | ........ | W. M. James. | 1694 | 125 | N. | 65 | W. M. James | 4 5 |  |
| — | — | | | P. | ........ | do | Morris ave. | 2 | N. | Pd. | W. M. James. | 6 | |
| — | 15 | | | P. | ........ | M. Gas L. Co | T. ...... | 1 | N. | 25 | M. Gas L. Co (D. H.)...... | | |
| 221 | 15 | | | 4 bskts. | ........ | J. Stephenson. | 2082 Wash. ave...... | 100 | N. | 50 | Mrs. J. T. Stephenson... | 7 | |
| 280 | 14 | 48 st. | | Ex. | ........ | Agent | J. A. Wolf. | 1 | N. 160 | 1.60 | F. H. M, per W. Ed. C. R. S. | 8 | |
| 221 | 15 | | | Val. | ........ | A. Copeland. | Mt. Hope Hotel. | 15 | N. | 30 | James Mills.. | 4 | Sept. 16, 1891. |
| — | — | | | Coop, chick. | ........ | J. H. Nevelle. | 1984 Franklin. | 30 | N. 110 | 1.80 | J. H. Nevelle. | 10 | |
| — | — | | | Bx. | ........ | P. Wood | 17792 Arthur ave. | 50 | N. | Pd. | Mr. Peter T. Wood. | 11 | |
| 221 | — | | 5 07 | P. | ........ | G. Norton | 17792 Anthony av. | 2 1 | N. | 25 | Geo. Norton.. | 12 13 | |
| — | — | | | P. 2 Vdiin. | ........ | M. Robinson.. Q. V. Cary | Mt. Hope Hotel. | 32 | N. | ...... | Made same... | 14 | |
| 221 | — | | | | | | | | | 40 | James Mills.. | 15 | |
| 220 | — | Lawrence M. C. | | Pn. | 20 00 n | O. H. LaBarre | 2073 Bath ave. | | N. | Pd. | O.H. LaBarre. | 16 | |
| 241 | 15 | 65 B'way. | | Pn. | 10 00 n | M. A.Roberts. | 1778 R. R. | ...... | N. | Pd. | Mrs. H. Roberts.. | 17 | M. H. Washington, Notary. |
| 221 | — | 48 st. | | Pen. | om 14 00 | M. J. McDade, | T. ..... | 18 | N. | 30 | Mrs. J. H. Buckbee.... F. W. 540. | 18 19 | F. H 540. |
| | | | | | | | | | | $700 | | | |

The fact that defendant's name in the way bill was misspelled "Stevenson," and that No. 2082 instead of 2074 Washington avenue was erroneously inserted by Herger in the delivery sheet, are matters of slight importance and not sufficient to discredit the documentary evidence and the testimony of three witnesses. Under the circumstances of this case it is impossible to believe that Edwards, Whispell and the employees of the express company in September, 1891, more than three years before this indictment was found, entered into a conspiracy to manufacture these documents. They had no motive. The defendant and his wife testified that the peaches were not received. The wife swore that the signature on the delivery sheet was not hers. The defendant swore that the signature did not resemble the handwriting of his wife, and also that it might look a little like it. Upon this conflicting evidence, the conflicting testimony of the defendant and Edwards in respect to their interview at the station house and evidence in regard to the prosecution of Edwards for violating the ordinance relating to sidewalks, and the discontinuance of some of those prosecutions after the last interview at the station house and other evidence which need not be referred to, this case was submitted to the jury under instructions which were eminently fair and not unfavorable to the defendant, and he was convicted. I am unable to find any error calling for a reversal of the judgment.

Code Crim. Proc.: "§ 542. After hearing the appeal the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."

The judgment should be affirmed.

Judgment reversed, new trial granted.